**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**


| | |
|---|---|
| **THOMAS ROBERT FOSTER, ET AL.** | * |
|     **Plaintiffs** | * |
| | * |
| **v.** | *   **Civil No: 1:13-03758 GLR** |
| | * |
| | * |
| **POLICE OFFICER THOMAS E. WILSON, ET AL.** | * |
|     **Defendants** | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RESPONSE  IN OPPOSITION TO MUNICIPAL DEFENDANTS MAYOR & CITY
COUNCIL'S AND FREDERICK H. BEALEFELD'S MOTIONS TO  DISMISS**

Plaintiffs, by and through their undersigned counsel, hereby file this response in

opposition to Defendant Mayor and City Council's motion to dismiss, and for reasons state:

**INTRODUCTION**

Plaintiffs filed their three count complaint against four individual police officers

(hereinafter, "the individual officers") and municipal defendants, Frederick H.  Bealefeld, III

(hereinafter, "Bealefeld") and Mayor and City Council of Baltimore (hereinafter, "M &CC").

Counts I and II of the complaint pertain solely to the individual officers who, through their

counsel, have answered the complaint.  Count III, however, pertains to the municipal defendants,

who have filed separate motions to dismiss.  Even so, in keeping with Plaintiffs' request for an

enlargement of time to respond simultaneously to the separate motions (Paper No. ___),

Plaintiffs consolidate their responses to both motions herein.

**The Complaint**

And all times relevant to this complaint, the Plaintiffs resided at 5611 Wilvan Avenue,

Baltimore, Maryland 21215.  Thomas Darnell Foster (hereinafter, "Foster, Sr.") is listed on the

1

deed as owner of the property.  The Plaintiffs' residence is a two story, brick, single-family detached home that is equipped with surveillance cameras covering the front and exterior entrances of the residence. On the afternoon of May 24, 2012 at approximately 3:10 pomp, Plaintiff Thomas Robert Foster (hereinafter, "Foster, Jr.") exited the front door of Plaintiffs' home, walked through his driveway across the street to his personal vehicle, and drove off. The surveillance camera in front of Plaintiffs' home captured Foster Mr.'s image as he left home.

A few minutes later, Foster Jr. was arrested by Defendant Wilson and Defendant Fisher a few blocks away from his home. After arresting Foster, Jr., Defendant Wilson wrote a detailed ***sworn*** statement of probable cause which purported to justify the arrest. According to the sworn statement of probable cause, on May 24, 2012 at approximately 3:00 PM, Defendants Wilson and Fisher "entered a position near the 5600 block of Wilvan Avenue to make observations" of Plaintiffs' home.  In his sworn statement, Defendant Wilson claims to have actually observed Foster Jr. exit the front door of his residence while carrying  a black drawstring bag in his hands. The black drawstring bag purportedly contained CDS and related paraphernalia. Defendant Wilson's sworn statement further claims that Foster, Jr. then entered his personal vehicle with the black drawstring bag and drove off. However, in direct contradiction to Defendant Wilson's sworn statement, the surveillance camera at the front of Plaintiffs' home revealed that Foster Jr. was not carrying a black bag or any similar item in his hands when he exited his home.

Ultimately, Defendants Wilson and Fisher initiated a vehicle pursuit and placed Foster Jr. under arrest for CDS violations.  While taking Foster, Jr. into custody, Defendant Wilson employed excessive and unreasonable force against the person of Foster, Jr.  Such force included, but was not limited to, striking Plaintiff Foster in his face while he (Foster, Jr.) was handcuffed.

2

After Foster Jr. was placed under arrest, Defendants Wilson and Fisher then responded directly to Plaintiffs' home, unlawfully and unjustifiably entered without a warrant and began unlawfully searching the premises. At some point Defendants Gladstone and Vignola entered the premises without a warrant and assisted Defendants Wilson and Fisher in their unlawful actions. The surveillance camera at the front of Plaintiffs' home captured the image of the Defendants Wilson, Vignola, Fisher and Gladstone as they entered the home without a warrant.

Foster, Sr. was not at home when Defendants Wilson and Fisher first entered Plaintiffs' home without a warrant. However, a short time after Plaintiff  Surina Foster (hereinafter, "Surina") learned of the incident , she responded home. While inside the home and in the presence of Surina, Defendants Wilson, Fisher, Gladstone and Vignola continued to search various areas of the home. As they conducted their unlawful search and seizure of the premises, Defendants Wilson, Gladstone, Vignola and Fisher, unlawfully restricted surrender Surina's movements. In addition, they unlawfully and unjustifiably threatened to place criminal charges against her.

Contemporaneous to these events, Defendant Wilson applied to the Circuit Court for Baltimore City, The Honorable Judge Michael Reed, for a search and seizure warrant. In his application, Defendant Wilson signed a sworn affidavit wherein he falsely represented to the Circuit Court for Baltimore City the same false information he included in his statement of probable cause, namely, that he observed Foster Jr. leave home carrying a black drawstring bag that contained CDS and related paraphernalia. As stated, surveillance cameras at Plaintiffs' home proved that Foster Jr. **<u>DID NOT</u>** leave his home with a black bag or other similar item containing contraband, despite the assertions made in Defendant Wilson's sworn statements.  Based upon Defendant Wilson's false representations he made in his sworn affidavit (which substantially

mirrored his statement of probable cause), the Circuit Court signed the search and seizure

warrant for Plaintiffs' home. The false assertions Defendant Wilson made in his statement of

probable cause and warrant application led to Foster Mr.'s criminal indictment and subsequent

incarceration.  In all, Foster Jr. was incarcerated from May 24, 2012 until December 7, 2012,

totaling 197 days.

      Defendant Wilson has a prior history of making false representations to a Court. In fact,

in 2003 Defendant Foster provided false testimony to this Honorable Court in the matter of

*United States v. Mason Weaver,* Case No. 02-CR-00491-AMD. In that case, the Honorable Judge

Andre M. Davis commented on the record and in open court that Defendant Wilson's affidavit

and testimony were "knowing lies." As such, **Defendant Bealefeld and the responsible**

**policymaking officials of the Defendant Mayor and City Council of Baltimore knew, or in**

**the exercise their reasonable care should have known, that Defendant Wilson had engaged**

**in a pattern and practice of misconduct, including but not limited to, falsifying affidavits,**

**conducting illegal searches, employing the use of excessive force, making illegal arrests,**

**falsely imprisoning, and otherwise violating the constitutional rights of persons in the City**

**of Baltimore.** Yet, despite knowledge of Wilson's pattern and practice of illegality, Defendants

Bealefeld and Mayor and City Council of Baltimore failed to properly investigate these instances

of illegality, and failed to supervise, train and discipline Defendant Wilson. Rather, they allowed

him to remain in his position as a drug enforcement officer.

      Moreover, Defendants Bealefeld and Mayor and City Council Baltimore developed a

"quota" policy or custom with regards to acts of illegality committed by officers, including

defendant Wilson, against civilians which encouraged the individual defendants in this case to

4

believe that they could violate the constitutional rights of plaintiffs with impunity and with the explicit or tacit approval of Defendants Bealefeld and the Mayor and City Council Baltimore.

## STANDARD OF REVIEW

Under Rule 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct.  1955, 1969 (2007).  The court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari* , 7 F.3d1130, 1134 (4th Cir.  1993), but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan  v. Allain,* 478 U.S.  265, 286 (1986), nor "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d.  726, 730 (4th Cir.  2002).  Thus,"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965.

F.R.C.P.  8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).  Even though the notice-pleading requirements under Rule 8 are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  In that vein, the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007), and the facts pled must "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 557).

**ARGUMENT**

**I.    THE COMPLAINT ASSERTS A SUFFICIENT CLAIM AGAINST THE M&CC AS WELL AS DEFENDANT BEALEFELD.**

      Even though the Baltimore Police Department (hereinafter, "BPD") is, in fact, consider to be a Maryland State agency, Defendant M&CC clearly exercises sufficient control over the BPD and its police commissioner.  With respect to the relationship between the city of Baltimore and the BPD, 4th Circuit precedent clearly establishes the fact that the BPD, as a state agency, is not this positive in determining whether the M & CC can escape liability for unlawful acts of officers.  *Wilcher v. Curley*, 519 F.Supp. 1, 4 (D. Md. 1980). In *Wilcher*, the court recognized that the BPD and Commissioner, "or hybrid creatures," and found that, while the BPD is, in fact, a Maryland State agency, the City of Baltimore does, "exercise(s) such substantial control over the day to day activities and policies of the Department," so that, "if there was something major amiss in the Department . . .  the City and / or Commissioner either would or should have known about, and would or should have taken steps towards cure of the same." *Wilcher*, 519 Supp. at 4.  In making this determination, the court based its reasoning on the following factors: 1) the City of Baltimore creates the Police Department's budget and provided two-thirds of its funding; (2) employees of the Department were paid by the City and received City medical insurance; (3) the police commissioner regularly confers with the Mayor and City Council concerning police related matters; (4) the appropriations procedures are governed by the City; (5) the City Civil Service Commission performs police examinations; and (6) the Mayor appoints and removes the Police Commissioner, among other things.  Hence, the designation of the BPD as a state agency, standing alone, is not sufficient to preclude Defendant M&CC from liability and the present case.

Plaintiffs recognize well-settled law that a municipality cannot be held liable under principles of *respondeat superior*. However, it is also well-settled law that M & CC can be held liable in situations such as the present case, which involves policies, customs, and/or omissions involving the municipality, in addition to direct the acts by M & CC's own employees. *See: Monell v. Department of Social Services*, 436 U.S. 658 (1978). In that case, the Court permitted direct government liability under § 1983 when, " the action that is alleged to be unconstitutional implement or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's official decision-making channels." *See: Id., Canton v. Harris,* 489 U.S. 378, 389 (1989). In those cases, and in the present case, the theory of *respondeat superior* is not the basis for municipal liability. Rather, the court's reasoning in those cases that should also apply to this case is that, "a municipal policy or custom can be inferred from the acts or omissions of municipal supervisory officials." *Hector v. Weglein*, 558 F.Supp. 194, 200 (D. Md. 1982) (citing*: Leite v. City of Providence*, 463 F.Supp., 585, 589 (D. R.I. 1978). Further, when an omission is alleged, as in this case, it must equate to," deliberate indifference" on the part of the supervisors. *See: Estelle v. Gamble*, 429 U.S. 97 (1976).

The Fourth Circuit, in *Hector v. Weglein*, will has recognized such indifference when an official, "failed to act or acted inadequately when he had actual or imputed knowledge of a past pattern of police misconduct or knowledge of well-known, isolated incidents of police conduct." *Hector v. Weglein*, 558 F.Supp at 201. More specifically, the court summarized:

> "Thus, at least two types of inaction have been recognized by the courts as actionable under § 1983: first, the supervisor knew or had imputed knowledge of a past pattern or acts of police misconduct and did nothing about it; or second, the lack of proper training and/or supervision was so severe as to reach the level of 'deliberate indifference' to citizens' constitutional rights…Additionally, to prove a breach based on an action, notice on the part of the supervisor is required." *Id.* at 202.

7

This reasoning is particularly applicable to the present case, as the municipal Defendants have remained on constant notice of the ongoing acts of perjury and other misconduct committed by Defendant Wilson and his cohorts.  As stated, Defendant Wilson previously had been severely admonished in open court by a United States District Court judge for telling, "knowing lies," during a suppression hearing in the matter of *U.S. v Mason Antonio Weaver*, 02-0491. In that case, as here, Defendant Wilson claimed to have positioned himself in a covert surveillance location from which he purported to have made observations that proved implausible. It is particularly noteworthy that Mr. Weaver's indictment ultimately was dismissed.

Upon information and belief, the matter of Defendant Wilson's false testimony was investigated by the BPD's Internal Affairs Division after the *Weaver* case was dismissed. Upon completion of the investigation, the BPD required Defendant Wilson to lose five days to leave and assigned him to a one-day search and seizure training course.  Yet, despite the severe admonishment by the court and the BPD investigation resulting in Defendant Wilson being punished, the municipal defendants failed to transfer defendant Wilson out of the unit so that he could no longer tell "knowing lies" against citizens of Baltimore. Rather, with the municipal defendants  permitted Defendant Wilson to remain in an assignment wherein he could tell lies against other citizens.

This information was brought out in yet another criminal matter wherein Defendant Wilson's credibility was severely questioned, namely, *State v. Bryan Sivells*, Baltimore City Circuit Court Case No.: 108234014.  In that case, Defendant Wilson claimed to have observed an illegal drug transaction involving Mr. Sivells and an unidentified female. *See: Bryan Sivells v. State of Maryland*, 9 A.3d 123, 128-129 (2010).  Even though Defendant Wilson's credibility came under severe attack by defense counsel, the assistant state's attorney in the case vouched

for Defendant Wilson's credibility, and Mr. Sivells subsequently was convicted.  However, the Court of Special Appeals reversed the conviction.  Yet, even in the face of these events, the municipal defendants permitted Defendant Wilson to remain in an assignment where he could continue to tell lies against citizens he is sworn to protect.

Clearly, in light of these facts and circumstances, an inference may be drawn that the municipal defendants constantly remained on notice of Defendant Wilson's lack of credibility. This is especially true in light of the fact that BPD maintains a policy to administratively prosecute and reassign police officers who have demonstrated a history of making false statements.  Why, in this case, did that policy and procedure not apply to Defendant Wilson? Why would the municipal defendants ignore their longstanding policy and allow defendant Wilson to remain in a position to tell "knowing lies" against citizens as he did in the instant case.

In consideration of these questions, if this court finds that the Plaintiffs have not made a *prima facie* showing of a legally sufficient claim against the municipal defendants, then the court should allow Plaintiffs a sufficient opportunity to conduct discovery and/or grant Plaintiffs leave to amend the complaint to reflect in more detail the information contained in this response.

## CONCLUSION

For the foregoing reasons, this court should deny the municipal defendants' motions to dismiss the complaint, the grant such other and further relief as the Plaintiffs' cause may require.

Respectfully submitted,


/s/_____
Robert L. Smith, Jr.
Fed. Bar No. 024468
2317 North Charles Street
Baltimore, MD 21218
(410) 554-9022
Facsimile: (410) 554-9022

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of May, 2014, the foregoing Response in Opposition to Municipal Defendants Mayor and City Council's and Frederick H. Bealefeld's Motions to Dismiss were served on the following counsel of record:

Daniel W. Goldberg, Esquire
Assistant Solicitor
Baltimore City Law Department and
100 North Holliday Street, Room 169
Baltimore, Maryland 21202

And

Dorrell A.  Brooks, Esquire
Assistant City Solicitor
Legal Affairs Division
Baltimore Police Department
101 North Holliday Street, Suite 101
Baltimore, Maryland 21202

/s/_____
Robert L. Smith, Jr.