UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**George L. Russell, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

August 7, 2014

MEMORANDUM TO COUNSEL RE:     Thomas Robert Foster, et al. v. Officer
                                                              Carmine Vignola, et al.
                                                              Civil Action No. GLR-13-3758

Dear Counsel:

Pending before the Court are Defendants Mayor and City Council of Baltimore (the "City"), and Former Baltimore Police Commissioner Frederick Bealefeld, III's ("Commissioner Bealefeld") respective Motions to Dismiss. (ECF Nos. 11, 21). Plaintiffs, Thomas Robert Foster, Jr., and two immediate family members,[1] are suing Officers Thomas E. Wilson, Keith Gladstone, Carmine Vignola, and Gregory Fisher (collectively, the "Officer Defendants"), the City, and former Commissioner Bealefeld, for civil and constitutional violations stemming from a false arrest, falsified sworn statement of probable cause, and an illegal search of Plaintiffs' home. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Motions will be granted.

The Plaintiffs' residence is a two story, brick, single-family detached home that is equipped with surveillance cameras covering the front exterior entrance. On the afternoon of May 24, 2012, the surveillance camera in front of the Plaintiffs' home captured Foster, Jr. exit the front door and drive off in his personal vehicle. A few minutes later, Foster, Jr. was arrested by Wilson and Fisher a few blocks from his home. Upon taking Foster, Jr. into custody, Wilson allegedly employed excessive and unreasonable force against him by striking Foster, Jr. in the face while he was handcuffed. Additionally, Plaintiffs allege that after arresting Foster, Jr., the Officer Defendants entered Plaintiffs' home without a warrant and began searching the premises. During the search, the Officer Defendants allegedly restricted Surina Foster's movement, and threatened to place criminal charges against her.

Contemporaneous to these events, Wilson applied to the Circuit Court for Baltimore City for a search and seizure warrant. According to a detailed sworn statement of probable cause, Wilson claims to have observed Foster, Jr. carrying a black drawstring bag purportedly containing CDS and related paraphernalia when he exited his home on May 24. Review of the surveillance video, however, revealed that Foster, Jr. was not carrying a black bag or any similar item when he exited his home. The Office of the State's Attorney declined to prosecute Foster, Jr. The false assertions made by Wilson, however, resulted in a criminal indictment and subsequent incarceration of Foster, Jr. totaling 197 days.

On December 12, 2013, Plaintiffs filed a three-count Complaint. (ECF No. 1). Counts I and II pertain solely to the individual Officer Defendants. Count III alleges constitutional violations asserted under § 1983 against former Commissioner Bealefeld and the City. The City moved to dismiss the

---

[1] The family-member Plaintiffs include Foster, Jr.'s father, Thomas Darnell Foster, and sister, Surina C. Foster.

Complaint against it on April 7, 2014.  (ECF No. 11).  Former Commissioner Bealefeld moved to dismiss the Complaint against him on May 13, 2014.  (ECF No. 21).  Plaintiffs filed a joint response on May 30, 2014.  (ECF No. 25).  Former Commissioner Bealefeld filed a Reply on June 12, 2014 (ECF No. 26), and the City filed a Reply on June 16, 2014 (ECF No. 27).  Defendants' Motions present two prevailing issues.  The first is whether the City sufficiently controls the Baltimore Police Department ("BPD") to be subject to liability under 42 U.S.C. § 1983 (2012) for constitutional violations by Baltimore police officers.  The second is whether the Complaint pleads sufficient facts to state a plausible § 1983 claim against former Commissioner Bealefeld in his individual and official capacities.

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege enough facts to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth.  Id. (citing Twombly, 550 U.S. at 555).

Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level."  Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).  And in doing so, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

First, the City asks the Court to dismiss the Complaint against it because it lacks sufficient control over the BPD to be liable under § 1983 for the conduct of Baltimore police officers.  The Court agrees and will dismiss the claims against the City.

The precedent set by the Supreme Court of the United States in Monell v. Department of Social Services of the City of New York allows plaintiffs to sue the City under § 1983 for the unconstitutional conduct of its employees.  436 U.S. 658 (1978).  The threshold question to be decided, therefore, is whether Baltimore police officers are City employees.

Under Maryland law, the BPD is a state agency.[2]  Mayor & City Council of Balt. v. Clark, 944 A.2d 1122, 1131 (Md. 2008); Balt. Police Dep't v. Cherkes, 780 A.2d 410, 428 (Md.Ct.Spec.App. 2001); Clea v. Mayor & City Council of Balt., 541 A.2d 1303, 1306 (Md. 1988), superseded by statute, Md. Code Ann., State Gov't § 12-101(a) (West 2014), as recognized in D'Aoust v. Diamond, 36 A.3d 941 (Md. 2012). The unique relationship between the City and the BPD confuses the issue of whether Baltimore police officers are City employees.  The issue is further confused by a dichotomy of cases addressing whether the City sufficiently controls the BPD for § 1983 purposes.  In the Estate of Anderson v. Strohman, however, this Court recently declined to follow the line of cases concluding that the City could be liable under § 1983 for Baltimore police officer conduct because those cases appeared to merge the § 1983 municipal liability question with an Eleventh Amendment analysis.  --- F.Supp.2d ----, No. GLR-13-3167, 2014 WL 1153785, *3-*6 (D.Md. Mar. 19, 2014).  The Court concluded "based

---

[2] Because many earlier cases discuss the unique relationship between the City and BPD at length, the Court will not belabor the point here.  For a more detailed discussion, see Clark, 944 A.2d at 1128–31.

on governing Maryland and federal law, that a § 1983 claim cannot be brought against the City for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers." Strohman, 2014 WL 1153785, at *6.  Accordingly, the Court will dismiss the Complaint against the City.

Next, the Court will also dismiss the Complaint against former Commissioner Bealefeld in his individual and official capacities because Plaintiffs fail to plead the basic elements necessary for the Court to impose supervisory liability under § 1983.

Plaintiffs do not plead any facts demonstrating that former Commissioner Bealefeld took any affirmative action or inaction related to the arrest, confinement, or prosecution of Foster, Jr., but allege former Commissioner Bealefeld "developed a 'quota' policy or custom with regard to acts of illegality committed by officers, including defendant Wilson, against civilians which encouraged the individual defendants in this case to believe that they could violate the constitutional rights of plaintiffs with impunity and with the explicit or tacit approval of [Commissioner] Bealefeld . . . ." (Compl. ¶ 47).

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (citing Monell, 436 U.S. at 691).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) <u>the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices</u>;  and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (emphasis added).

Further, suing a public employee in his official capacity is tantamount to suing directly the government agency for which he works. See Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  A plaintiff seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997).  Identifying a specific "policy" "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403-04 (citing Monell, 436 U.S. at 694).  "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404 (citing Monell, 436 U.S. at 690-91).

Here, Plaintiffs do not plead facts detailing the alleged policy of "quotas," or how the alleged quota system led to the false arrest of Foster, Jr.  Plaintiffs merely assert that despite former Commissioner Bealefeld's knowledge of Wilson's misconduct, including but not limited to, falsifying affidavits, conducting illegal searches, employing the use of excessive force, making illegal arrests, falsely imprisoning, and otherwise violating the constitutional rights of persons in the City of Baltimore,

3

he failed to properly investigate, supervise, train, and discipline Wilson, from which a "tacit authorization" of that misconduct can be inferred. (Compl. ¶¶ 45-46). Where the basis of municipal liability under § 1983 rests on the agency's failure to investigate, supervise, train, and discipline, however, a plaintiff must similarly demonstrate "deliberate indifference," on the part of the decision maker, to rights of persons with whom police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

The deliberate indifference standard requires a showing that a decision-maker had notice of a pattern of wide-spread abuse but failed to take remedial steps to address the abuse. See Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel."); see also Harris, 489 U.S. at 399-400 (O'Connor, J., concurring in part and dissenting in part) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in Monell." (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and dissenting in part))) (internal quotation marks omitted); Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir. 1985) ("[A] municipality may be liable [under § 1983] if it had notice of prior misbehavior by its officers and failed to take remedial steps amounting to deliberate indifference to the offensive acts."). Plaintiffs allege, however, only a single isolated incident of a similar violation in which Wilson provided false testimony in a 2003 suppression hearing in the matter of United States v. Mason Weaver, Case No. 02-CR-00491-AMD (D.Md. 2002). (Compl. ¶ 34).

Further, in their Response in Opposition to the Motions to Dismiss, Plaintiffs concede that the BPD conducted an administrative investigation into the 2003 allegations of misconduct against Wilson. As a result of that investigation, Wilson lost five days of paid leave and was required to attend additional training on search warrant writing. (Pls.' Resp. Opp'n Defs.' Mots. Dismiss 8, ECF No. 25). Thus, Plaintiffs have not sufficiently alleged a history of wide-spread abuse or pattern of violations from which a "tacit authorization" by former Commissioner Bealefeld can be inferred. Accordingly, the claims against former Commissioner Bealefeld in his individual and official capacities will be dismissed.

For the foregoing reasons, the City and former Commissioner Bealefeld's respective Motions to Dismiss, (ECF Nos. 11, 21), are GRANTED. Count III of the Complaint is dismissed. Despite the informal nature of this Memorandum, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly and terminate the City and former Commissioner Bealefeld from this case.

Very truly yours,

/s/
_____
George L. Russell, III
United States District Judge