**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**


| | |
|---|---|
| **THOMAS ROBERT FOSTER, ET AL.**<br>　　**Plaintiffs** | *<br>*<br>* |
| **v.** | *　**Civil No: 1:13-03758 GLR**<br>*<br>* |
| **POLICE OFFICER THOMAS E. WILSON, ET AL.**<br>　　**Defendants** | *<br>*<br>* |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiffs, by and through their undersigned counsel, hereby file this response in opposition to Defendants' motion for summary judgment dismiss, and for reasons state:

<u>**RELEVANT MATERIAL FACTS**</u>

<u>**Defendant Wilson's Background**</u>

Defendant Police Officer Thomas E. Wilson (hereinafter, "Wilson") has a prior history of making false representations to a Court. In fact, in 2003 Defendant Foster provided false testimony to this Honorable Court in the matter of *United States v. Mason Weaver,* Case No. 02-CR-00491-AMD. In that case, this Court severely admonished Defendant Wilson and commented on the record and in open court that Defendant Wilson's affidavit and testimony were "knowing lies." Even so, Defendant Wilson claims not to recall much information about the case even though the Court severely admonished him in open court, and he was administratively charged and punished as a result of his false representations to the Court. (Ex. 14).

On or about November 20, 2013, Defendant Wilson was indicted in the Circuit Court for Baltimore City and charged with Perjury and Misconduct in Office, Case No. 213324002. (Ex.

14).  Wilson's indictment is a direct result of the false information Defendant Wilson provided in his affidavit and / or statement of probable cause against Foster, Jr.

**Defendant Wilson's Version of Evevnts**

On May 24, 2012, Plaintiff Thomas Robert Foster (hereinafter, "Foster Jr.") was arrested by Wilson and Police Officer Gregory Fisher (hereinafter, "Fisher").  Pursuant to that arrest, Wilson authored a sworn statement of probable cause purporting to justify the arrest.  In his sworn statement, Wilson claims to have received information from a confidential source, whom he referred to as CS-1, alleging that a "light skinned, slim young black male approximately 20-25 years old, medium complexion . . .  was stashing illegal narcotics, specifically marijuana, at his dwelling which he sold around the immediate area." (Ex. 1).  Wilson further claimed in his sworn statement that on May 24, 2012 at approximately 3:00 PM, he and Defendant Fisher "entered a position near the 5600 block of Wilvan Avenue to observe the home at 5611 Wilvan Avenue . . ."  Ex.1  At his deposition  Wilson specified that that he and Fisher conducted their surveillance while seated in their unmarked parked police vehicle on the street that intersects Wilvan Avenue at the bottom of the block. That street is identified as the 5600 block of Groveland Avenue). (Ex. 1);( Ex. 6, Wilson dep. at 42); (Ex. 10, Aerial photos).

Defendant Wilson's sworn statement further attests that, "[A]t approximately 3:15 [p.m.], I observed  a young light skinned thin black male later identified as Thomas Robert Foster (8/14/86 of this address) exit the front door of this dwelling [5611 Wilvan Avenue] carrying a black drawstring bag which he entered his vehicle with . . ." and drove off. At his deposition, Wilson contradicted this sworn statement and admitted that, in fact, he DID NOT observe Foster Jr. exit his front door carrying a black bag. Rather, Wilson testified that he saw the bag for the

first time as Plaintiff Foster Jr. was within arm's length of his vehicle and not when he exited his home. (Ex. 6 at 43).

Defendant Wilson further claims that when Foster, Jr. drove from the front of his home, he made a left turn onto the street on which they were positioned, the 5600 block of Groveland Avenue. Wilson claims that they followed Foster Jr. around to the intersection of Belle and Parkview Avenues. There, claims Wilson, he observed Foster, Jr. engage in a "possible" illicit drug transaction.  More specifically, Wilson alleged that he actually observed Foster Jr. pull his vehicle "up next to an unknown male wearing a white T-shirt, blue jeans, braided hair who was standing on the corner. . ."  At that point, "[T]his unknown B-male briefly conversed with Mr. Foster through his driver's side open window before handing Mr. Foster currency in bill form in exchange for small object(s) of suspected CDS . . ." which the unknown male "cupped" in his hand. (Ex.1 ); (Ex. 6 at 48-53).

Wilson's sworn statement further indicates that, upon observing this alleged drug transaction, he and Fisher followed Foster Jr. to the intersection of Haddock and Cadillac Avenues where they activated their police emergency lights in order to induce Foster, Jr. to pull over. PC statement; Wilson dep. at 56-59. Wilson further claims that Foster Jr. initially stopped, then drove away as the officers approached his vehicle. This action caused Wilson and Fisher to conduct a car chase through the neighborhood during which he claims he saw Foster, Jr. toss a black drawstring bag from his vehicle.

Wilson claims that the car chase ended when he and Fisher chased Foster Jr. to a dead-end street near the Seton Park Apartments where Foster exited his car, fled on foot, and was apprehended after a brief foot chase. At that point, Wilson responded to the 5600 Cadillac Avenue and retrieved a black drawstring bag. Wilson alleges that this bag was the same black

bag that he saw Plaintiff Foster carrying when he left his home. PC statement, Wilson dep. at 60-61. Defendant Wilson claims that the bag contained a small amount of marihuana (approximately four ounces valued at approximately $250.00), a scale, and "packaging material."  PC statement.

After Plaintiff Foster Jr. was placed under arrest, he called out to onlookers asking them to respond to his home and inform his "people" that he had been arrested.  PC statement. Wilson claims that this action caused him to suspect that other  members of the household would remove or destroy any contraband present in the home.  PC statement. Based upon these suspicions, Fisher responded to 5611 Wilvan Avenue the home and "secured" it by entering the through the front door using the house keys seized from Foster Jr.

After Fisher and other officers had already entered Plaintiffs' home without a warrant, Wilson applied to the Circuit Court for Baltimore City for a search and seizure warrant. In his sworn affidavit, Wilson represented to the Circuit Court for Baltimore City essentially the same information he included in his statement of probable cause. Most importantly, Wilson reiterated to the Court that he had actually observed Plaintiff Foster Jr. exit the front door of his home carrying a black drawstring bag that contained CDS and related paraphernalia.  S&S

Based upon Wilson's representations which he included in an affidavit which substantially mirrors his sworn statement of probable cause, the Circuit Court for Baltimore City issued a search and seizure warrant authorizing the search of the premises at 5611 Wilvan Avenue.

**Defendant Fisher's  Version of Material Facts:**

Fisher's version of material facts, in many ways, fails to corroborate Wilson's version of material facts. More importantly, Fisher's version of the facts grossly conflicts with Plaintiffs Foster Jr.'s and Surina Foster's (hereinafter, "Ms. Foster") versions.

With respect to his non-corroboration of Wilson's version of material facts, Fisher claims that he never interviewed, met, or otherwise conversed with or encountered the confidential source, CS-1, who allegedly provided information concerning Plaintiff Foster. Furthermore, Fisher claimed, as did Defendant Wilson, that he did not make any observations while the officers were parked near 5611 Wilvan Avenue. Instead, he simply lay down in the passenger seat and remained in that position even after Defendant Wilson allegedly began following Foster Jr.'s car from Wilvan Avenue. According to him, he did not raise his seat from the reclined position until after Wilson claims he witnessed the alleged drug transaction.

Fisher further testified that, after he raised his seat from the reclined position, he and Wilson attempted to conduct a car stop of Foster Jr. by activating their undercover car's emergency lights. Fisher claims that he got out of the car and approached the passenger side of Foster Jr.'s vehicle. However, before he reached Foster Jr.'s passenger side door, Foster Jr. "sped off." At that point, Fisher got back into the undercover police car and chased Foster Jr. through several neighborhood streets. The chase ended at a dead-end road near an apartment complex, at which time, Foster Jr. "jumped out and fled on foot." Fisher claims that he apprehended him after a brief chase. Fisher dep at 18-24. In fact, he testified that Foster Jr. lay down in the street and gave himself up. Fisher dep at 25-26.

Thereafter, Fisher that he and Wilson responded to 5611 Wilvan Avenue, knocked on the door, then used keys to enter the residence. While there, he and Wilson conducted a "protective sweep," wherein the checked various areas of the home to ensure that no one was hiding. Fisher dep at 37-38.

To sum up, although Fisher was in the same vehicle with Wilson, he (1) did not see Foster Jr. exit the front door of 5611 Wilvan Avenue; (2) he did not see Foster Jr. enter his

vehicle either with or without a black bag in his hand; (3) he did not see him turn onto the 4600 block of Groveland Avenue; (4) he did not see the unknown male who Wilson claims engaged in a suspected CDS transaction with Foster, Jr.; (5) he did not see Foster, Jr. allegedly sell CDS to the unknown male; (6) he did not see Foster Jr. toss a bag from his car during the car chase. Even more incredible, Fisher testified that Wilson did not tell him anything whatsoever about the investigation until he (Wilson) exclaimed in an excited utterance, "[h]e just hit that motherfucker."  Fisher dep at 15-18.  Rather, he claims that he remained reclined in the front passenger seat, and therefore, did not witness many of the events that are material to this litigation.

Moreover, his testimony directly contravenes Foster Jr.'s assertion that he struck Foster Jr. in the face after handcuffing him.  Of equal importance, his testimony directly contradicts Surina Foster's testimony who claims that she observed him and others searching various areas in the home without a warrant.

### Plaintiff Foster, Jr.'s Version of Events

On or about April 20, 2012, Foster Jr. was arrested and charged with possession of marijuana.  His co-defendant in that case was a man named Aaron Finley (hereinafter, Finley). As of May 24, 2012, their charges were pending adjudication in the District Court for Baltimore City, Case No. _____ and _____, respectively. Ex. 9.

On May 24, 2012, between 2:50p.m.and 3:00p.m., while Foster, Jr. was at home, he received a telephone call from Aaron Finley. Mr. Finley asked Foster, Jr. to meet him at the intersection of 4100 block Crawford Avenue and the 5600 block of Belle Avenue, which is approximately 3-4 blocks away from 5611 Wilvan Avenue. (Ex. 8); (Ex. 10. Foster Jr. exited his front door at approximately 2:56 p.m. with nothing in his hands except his key ring.  Upon

entering his vehicle, which was parked at the end of the walkway facing the 5600 block

Groveland Avenue, Foster Jr. sat in the driver's seat for approximately three minutes before

pulling off. As he sat in his car, he was careful to visually span the area around the intersection

of  Wilvan and Groveland Avenues where Wilson claims he and Fisher made their observations.

He was especially careful and kept a careful lookout because he knew that both he and Mr.

Finley were pending criminal charges for possession of marihuana, and were scheduled to appear

in court in the upcoming weeks. As a result of his careful scrutiny, Foster Jr. is certain beyond

any doubt that Wilson and Fisher *were not* situated at any point on Groveland Avenue where

they claimed they could see him exit his front door and / or enter his vehicle. (Ex. 8).

　　　After visually spanning the area, Foster Jr. drove to the end of his block and turned left

onto the 5600 block of Groveland Avenue. He then drove to the end of the 5600 block of

Groveland Avenue where it intersects with the 4100 block of Crawford Road. He turned left onto

the 4100 block of Crawford Road and drove one or two blocks where he stopped to meet with

Finley at their pre-planned location, the corner of Crawford Road and Belle Avenue.

　　　As Foster Jr. arrived at the intersection, Finley, who was driving a 2006 Lexus that he

had parked in the 5600 block of Belle Avenue, got out of his vehicle and sat in Foster Jr.'s front

passenger seat. He *never* came to Foster Jr.'s driver side window, and Foster, Jr. *never* handed

Finley any "small objects" through the window.

　　　They continued to sit in Foster Jr.'s car for approximately 2-3 minutes when they noticed

Wilson and Fisher drive eastbound through the 5600 block Belle Avenue from the direction of

the 3800 block of Parkview. Wilson and Fisher were driving a dark colored unmarked vehicle,

and Fisher did not have his passenger seat in a reclined position. Both Foster Jr. and Finley could

clearly see both Fisher and Wilson in their undercover police car.

The intersection of Belle Avenue and Parkview Avenue is one block west from where Foster Jr. and Finley were sitting at Crawford Road and Belle Avenue. As soon as they noticed Wilson and Fisher's vehicle, both Foster Jr. and Finley became suspicious and commented that they suspected police presence. At that point, Finley got out of Foster Jr.'s car, entered his 2006 Lexus and immediately drove away in the opposite direction from Wilson and Fisher. Foster Jr. did the same. However, as he headed back to his home, Wilson and Fisher flashed their emergency lights for him to pull over. Foster Jr. stopped momentarily, then drove to the area of the Parkview Apartments where fled on foot and was subsequently apprehended by Fisher. Ex. 8.

After Foster Jr. was handcuffed, Fisher placed him in the back of the police car. At that point, he advised Fisher that he left his son at home. Fisher responded that he didn't care and punched Foster Jr. in his face causing his mouth to bleed. Foster Jr. dep at 22-23; 37-38. Consequently, Plaintiff Foster Jr. was taken to the Central Booking Intake Facility and incarcerated. Initially, Plaintiff Foster Jr. was charged with twelve (12) criminal violations including five handgun related charges stemming from the execution of the search and seizure warrant, and bail was set at $500,000.00. However, after a bail review, his bail was raised to NO BAIL status. Ex___, Aff. of Foster Jr. In all, Foster Jr. was incarcerated from May 24, 2012 until December 7, 2012, totaling 197 days.

**<u>Surina Foster's Version of Material Facts</u>**

Surina Foster responded to the home after she learned via social media that her brother had been arrested. Upon her arrival, she observed several officers including Fisher, Gladstone and Vignola searching through the premises. In fact, Defendants Fisher, Gladstone and Vignola remained inside the dwelling prior to the issuance of the search warrant. Even so, they refused to allow her to enter the home, but she could observe them searching the premises through the front door.

While Fisher, Vignola and Gladstone were searching through the residence, Ms. Foster questioned why they were searching without a warrant. At that point, they became hostile and

threatened to arrest her after she questioned why they were searching the residence without a warrant.  (Ex. 11).

## 5611 Wilvan Avenue and Its Surveillance Equipment

It is undisputed that the Plaintiffs' residence is a two story, brick, single-family detached home which lists Thomas Darnell Foster (hereinafter, "Foster, Sr.") on the deed as owner of the property.  (Ex. 13). It is also undisputed that the premises was at all relevant times equipped with surveillance cameras covering the front and exterior entrances of the residence. Further, it is undisputed that the surveillance camera in front of Plaintiffs' home captured Foster Jr.'s image as he left home on May 24, 2012. The surveillance camera's span of vision includes the end of the 5600 block of Wilvan Avenue where it intersects with the 5600 block of Groveland Avenue. This is the location where Wilson claims that he and Fisher were positioned when Wilson saw Foster Jr. leave his home with the black bag. Of paramount importance is the fact that surveillance cameras at Plaintiffs' home proved that Foster Jr. DID NOT leave his home with a black bag or other similar item containing contraband, despite the assertions made in Defendant Wilson's sworn statement and warrant affidavit.

Upon inspecting the images produced by the surveillance camera, it is clear that Wilson's and Fisher's undercover car was nowhere within the camera's span of vision. It is equally clear and undisputed from the camera images that (1) Foster, Jr. did not exit his front door carrying a bag; (2) that Foster remained parked in front of his home for several minutes before driving off to meet Finley; (3) that at approximately 3:15 p.m., Wilson and Fisher entered the home with a key; (4) that  Surina Foster was denied entry into the premises while several police officers, both uniformed and plainclothes, entered and exited the residence over the course of several hours both before and after the issuance of the search warrant. (Surveillance DVD, Ex. 15).

**Criminal Court Proceedings**

The assertions Wilson made in his statement of probable cause and warrant application led to Foster Jr.'s criminal indictment in the Circuit Court for Baltimore City and his subsequent incarceration.  As stated, Foster Jr. was incarcerated from May 24, 2012 until December 7, 2012, totaling 197 days.

However, during the discovery phase of his case, Foster, Sr. provided a copy of the surveillance tape to prosecutors, and as a result, on or about December 7, 2012 the Office of the State's Attorney declined to prosecute Foster, Jr. by entering a *nolle prosequi* as to all charges.    After the criminal charges against Foster Jr. were dismissed, the State's Attorney's Office then initiated an investigation against Wilson. In fact,   On or about November 20, 2013, Defendant Wilson was indicted in the Circuit Court for Baltimore City and charged with Perjury and Misconduct in Office, Case No. 213324002. The indictment is a direct result of the false information Defendant Wilson provided in his affidavit and / or statement of probable cause against Foster, Jr. (Ex. 14).

## STANDARD OF REVIEW

When examining a motion for summary judgment, the non-moving party is in a favorable posture, being entitled to have credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible inferences from it drawn in his behalf, and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered. *Ross v. Communications Satellite Corp.,* 759 F.2d, 355 (4th Cir. 1985).  If "reasonable minds could differ" regarding these inferences, the motion must be denied.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). "Determining credibility, weighing evidence and drawing inferences are matters reserved

exclusively for the finder of fact at trial, not on summary judgment." *Id.* at 255. The Plaintiff's

forecast of evidence must be accepted as true, and all justifiable inferences from this forecast

must be drawn in the Plaintiff's favor in deciding this motion.

## ARGUMENT

### Genuine Dispute as to Factual Background

It is well settled that a court will not weigh the credibility of witnesses or other evidence

in ruling on a motion for summary judgment.  The disposition of matters regarding evaluation of

credibility are generally deemed inappropriate on summary judgment. *Brumback v.Callas*

*Contractors. Inc.*, 913 F.Supp. 929 (D.Md. 1995). Evaluating credibility, weighing evidence, and

drawing factual inferences are all functions reserved for the jury.  The disposition of matters

turning on credibility may only be determined by a trier of fact for summary judgment purposes.

*Nilson v. Historic Inns Group, Ltd.*, 903 F.Supp. 905.

It is more than abundantly clear that this case is replete with disputes over material facts.

Foster, Jr.'s and Surina's versions of the material facts of this case GROSSLY conflict with the

version of material facts presented by Wilson and Fisher. More that confirms the Defendants'

version of the relevant "facts." In addition, Foster Jr.'s and Surina's account of events are wholly

supported by the surveillance cameras affixed to the home and 5611 Wilvan Avenue.  The

evidence shows that Wilson lied on his statement of probable cause and in his search and seizure

warrant affidavit when he claimed that he actually observed Foster Jr's activities from a position

in the 5600 block of Groveland Avenue, when clearly he did not.  In fact, after being confronted

with the surveillance tape and his subsequent criminal charges, Wilson changed his story in his

deposition and admitted that he did not see Foster Jr. exit his home carrying a black bag, but he

observed him get into the car with it.  The surveillance video proves otherwise.

Moreover, Wilson's testimony is wholly unsupported by that incredible testimony of Fisher, who claims to have been lying down for much of the time the material events occurred. His testimony is absurd and should not be believed.  The evidence clearly shows that Wilson deliberately, and with reckless disregard for the truth, misrepresented material facts that led to the arrest of Foster Jr.  and the issuance of a search and seizure warrant for the home at 5611 Wilvan Avenue.

## **CONCLUSION**

Based upon the facts and circumstances of this case, Defendant's summary judgment motion must be denied.

Respectfully Submitted,


/s/_____
Robert L. Smith, Jr.
Fed Bar No. 024468
2317 North Charles Street
Baltimore, MD 21218
(410) 554-9022
rlsmithesq@verizon.net
Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **THOMAS ROBERT FOSTER, ET AL.**<br>     **Plaintiffs** | *<br>*<br>* |
| **v.** | *   **Civil No: 1:13-03758 GLR**<br>*<br>* |
| **POLICE OFFICER THOMAS E. WILSON, ET AL.**<br>     **Defendants** | *<br>*<br>* |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## NOTICE  OF  FILING  OF  LENGTHY  EXHIBIT

Exhibits 1 through 15, which are an attachment to Plaintiff's Response to

Summary Judgment, exist only in paper format and are 15 pages or longer. They will be

filed with the Clerk's Office in paper format.

I certify that within 24 hours of the filing of this Notice, I will file and serve paper

copies of the documents identified above.

|  |  |
|---|---|
| | /s/_____ |
| Date: February 4, 2015 | Robert L. Smith, Jr. |
| | Fed. Bar No. 024468 |
| | 2317 North Charles Street |
| | Baltimore, MD 21218 |
| | (410) 554-9022 |
| | rlsmithesq@verizon.net |