IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS ROBERT FOSTER, et al.,　　：

　　　Plaintiffs,　　　　　　　：

v.　　　　　　　　　　　　：　　Civil Action No. GLR-13-3758

OFFICER CARMINE VIGNOLA, et al.,：

　　　Defendants.　　　　　：

## MEMORANDUM OPINION

Plaintiffs, Thomas Robert Foster ("Foster, Jr."), Thomas Darnell Foster ("Foster, Sr."), and Surina C. Foster, bring this action pursuant to 42 U.S.C. § 1983 (2012), seeking monetary damages for alleged violations of their rights under the Fourth Amendment in connection with Foster, Jr.'s arrest and subsequent search of Plaintiffs' residence. Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 38) and Motion to Strike from Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Plaintiff Thomas Robert Foster's Affidavit (ECF No. 48). Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Defendants' Motion to Strike will be granted in part and the Motion for Summary Judgment will be granted.

## I.   BACKGROUND

Plaintiffs Foster, Jr. and Foster, Sr. reside at 5611 Wilvan Avenue, Baltimore, Maryland (the "Residence").   The Residence is a two story brick single-family detached home that is equipped with surveillance cameras covering the front and exterior entrances.   On the afternoon of May 24, 2012, at approximately 3:10 p.m., Foster, Jr. exited the front door of the Residence, walked through his driveway across the street to his personal vehicle, and drove off. The surveillance camera in front of the Residence captured Foster, Jr.'s image as he left the Residence.   A few minutes later, Foster, Jr. was arrested by Detectives Thomas E. Wilson and Gregory Fisher a few blocks from the Residence.   After arresting Foster, Jr., Detective Wilson wrote a detailed sworn statement of probable cause which purported to justify the arrest and subsequent search warrant for the Residence.

The following facts are derived from Detective Wilson's sworn statement of probable cause (Defs.' Mot. Summ. J. Ex. A ["Statement of Probable Cause"], ECF No. 38-2): while surveilling Foster, Jr. for suspected narcotics distribution based on statements from a confidential source, on May 24, 2012, at approximately 3:10 p.m., Detective Wilson observed Foster, Jr. exit the front door of the Residence carrying a black drawstring bag.  (Id. at 4-5).  Detectives Wilson and Fisher

2

proceeded to follow Foster, Jr., during which time Detective Wilson observed what he perceived to be a hand-to-hand drug transaction. (Id. at 5). An unknown male was observed approaching Foster, Jr.'s vehicle and, after a brief conversation, Foster, Jr. handed the unknown male U.S. currency in exchange for a small amount of a suspected controlled dangerous substance ("CDS"). (Id.). Foster, Jr. then began to drive away. (Id.).

Believing they had just witnessed a possible narcotics transaction, Detectives Wilson and Fisher attempted to conduct a car stop. (Id.). As Detectives Wilson and Fisher approached the stopped vehicle, Foster, Jr. drove off. (Id.). While pursuing the vehicle, Detective Wilson observed Foster, Jr. toss a black bag out of the driver's side window. (Id.). Detectives Wilson and Fisher continued to pursue the vehicle to a dead end, at which point, Foster, Jr. exited the vehicle and fled on foot. (Id.). After a brief chase on foot, Detectives Wilson and Fisher caught Foster, Jr. and arrested him. (Id.). Foster, Jr. alleges that while being taken into custody, Detective Wilson employed excessive and unreasonable force against him by striking him in his face while he was handcuffed. (See Compl. ¶¶ 20, 39, ECF No. 1).

After his apprehension, Foster, Jr. was transported back to the vehicle he had previously abandoned. Once the parties

arrived at the vehicle, Foster, Jr. began yelling to bystanders
to inform his "people" about his arrest.[1] (Statement of Probable
Cause at 6).   Detective Fisher seized a clear plastic bag
containing marijuana lying in plain view in the center console
of the vehicle.  (Id.).  Further, Detective Wilson retrieved the
black bag that was observed being thrown out of the vehicle.
(Id.).  The bag contained approximately one quarter pound of
marijuana, $250 in cash, a measuring scale, and CDS packaging
material.  (Id.).

Concerned that word of his arrest would result in the
removal of potential narcotics or contraband kept in the
Residence, Detectives Wilson and Fisher responded to 5611 Wilvan
Avenue.   (Id.).   Upon securing the Residence and performing a
protective sweep, Detectives Wilson and Fisher discovered an
unattended two year child old home alone.   (Id.).   Sergeant
Keith Gladstone and Detective Carmine Vignola were then called
to the location to secure the Residence while Detective Wilson
obtained a search warrant.

Based on these facts, Judge Michael W. Reed, of the Circuit
Court for Baltimore City, Maryland, issued a search warrant for

---

[1] Although not included in the Statement of Probable Cause,
at the time of his arrest Foster, Jr. also told detectives he
"had a baby at home."  (Foster Dep. 22:20-3:5).  Detective
Fisher testified at deposition that he and Detective Wilson
believed exigent circumstances necessitated immediate entry into
the Residence, in part, because they believed there was an
unattended "kid" there. (Fisher Dep. 32:5-9).

the Residence.    Upon searching the Residence, Defendants discovered three large bags of marijuana, a measuring scale, a .22 caliber revolver, a .40 caliber Berretta semiautomatic handgun, materials commonly used to package marijuana, and $920 dollars in cash.

In direct contradiction to Detective Wilson's sworn statement, however, a review of the video from the surveillance camera at the front of the Residence revealed that Foster, Jr. was not carrying a black bag, or any similar item, in his hands when he exited his home.   Moreover, the surveillance camera captured the image of all Defendants entering the Residence prior to the search warrant being issued.   On December 7, 2012 the Office of the State's Attorney released Foster, Jr. and declined to prosecute because of the discrepancy noted in Detective Wilson's statement of probable cause.

On December 12, 2013, Plaintiffs filed a three-count Complaint alleging constitutional violations resulting from a false arrest, falsified sworn statement of probable cause, and an illegal search of the Residence.   (ECF No. 1).   Plaintiffs allege the false assertions in the statement of probable cause and warrant application led to Foster, Jr.'s criminal indictment and subsequent incarceration totaling 197 days.   Further, Plaintiffs allege Defendants conducted an unlawful search of the Residence prior to obtaining a search warrant, while

contemporaneously unlawfully and unjustifiably restricting Ms. Foster's movements.

Count I states three separate causes of actions against Detective Wilson.  First, Foster, Jr. alleges Detective Wilson violated his Fourth Amendment right to be secure against an unreasonable seizure by acting without probable cause and using excessive force during his arrest.  Second, Foster, Sr. alleges Detective Wilson violated his Fourth Amendment right to be secure against an unreasonable search by conducting a warrantless search of his home and subsequently knowingly falsifying an affidavit in support of a search warrant.  Third, Ms. Foster alleges Detective Wilson violated her Fourth Amendment right to be secure against an unreasonable seizure by unjustifiably restricting her movements.

Count II alleges two separate causes of actions against Defendants Detectives Wilson, Vignola, and Fisher, and Sergeant Gladstone.  First, Plaintiffs allege Defendants violated their Fourth Amendment rights to be secure against an unreasonable search by unjustifiably entering and searching their home without a valid search warrant.  Second, Ms. Foster alleges Defendants violated her Fourth Amendment right to be secure against an unreasonable seizure by unjustifiably restricting her movements.  Count III was dismissed by the Court on August 7, 2014, and Defendants Mayor and City Council of Baltimore and

6

Former Baltimore Police Commissioner Frederick Bealefeld, III, were dismissed from the case. (See ECF No. 28).

On December 15, 2014, the remaining Defendants, Detectives Wilson, Vignola, and Fisher, and Sergeant Gladstone, filed a Motion for Summary Judgment (ECF No. 38) arguing they were legally justified in the search and seizure of Foster, Jr. and the Residence based on probable cause. On February 4, 2015, Plaintiffs filed a Response in Opposition to the Motion (ECF No. 43) asserting a dispute of material fact given Detective Wilson's misrepresentation in the search warrant and the parties' conflicting version of events leading up to Foster, Jr.'s arrest. On March 3, 2015, Defendants moved to Strike Foster, Jr.'s affidavit. (ECF No. 48). The Motions are fully briefed and ripe for disposition.

## II. DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144,

157 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (alteration in the original).  A "material fact" is a fact that might affect the outcome of a party's case.  <u>Id.</u> at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>Hooven-Lewis</u>, 249 F.3d at 265.

"The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting <u>Fed.R.Civ.P. 56(e)</u>). The

court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness credibility," Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).

## B.   Analysis

### 1. Motion to Strike

Preliminarily, Foster, Jr. attached to his Opposition to Defendants' Motion for Summary Judgment an affidavit asserting substantive information related to his version of events leading up to his arrest on the afternoon of May 24, 2012.  In reviewing the record, however, the Court is satisfied that the affidavit submitted by Foster, Jr. directly relates to subject matter for which he asserted a Fifth Amendment privilege at his deposition.

In In re Edmond, the United States Court of Appeals for the Fourth Circuit made clear that "the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to [compel a certain result on] summary judgment." 934 F.2d 1304, 1308 (4th Cir. 1991).  Plaintiffs argues In re Edmond should not apply here because he voluntarily submitted to the deposition, but invoked his Fifth Amendment privilege concerning only certain activities; while Edmond invoked his Fifth Amendment privilege to shield himself from having to submit to a

deposition all together. The distinction is immaterial, however, because here, as in In re Edmond, "[b]y selectively asserting his Fifth Amendment privilege, [Foster, Jr.] attempted to insure that his unquestioned, unverified affidavit would be the only version [of events]." Id. at 1308. Because Defendants did not have an opportunity to challenge Foster, Jr.'s testimony, their Motion to Strike from Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Plaintiff Thomas Robert Foster's Affidavit will be granted.

**2. Warrantless Arrest**

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless seizures are "per se unreasonable"—"subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). A warrantless arrest is reasonable under the Fourth Amendment if there is probable cause to believe that the suspect has committed or is committing an offense. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Thus, central to this case is whether there was probable cause to believe that Foster, Jr. was engaged in criminal activity.

Probable cause to justify an arrest is determined from the totality of the circumstances known to the officer at the time of the arrest. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.

2002) (citing <u>United States v. Garcia</u>, 848 F.2d 58, 59-60 (4th Cir. 1988)). "There need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." <u>Id.</u> (citing <u>Wong Sun v. United States</u>, 371 U.S. 471, 479 (1963)). In considering whether probable cause exists in a particular situation, the Court must consider two factors: "the suspect's conduct as shown to the officer, and the contours of the offense thought to be committed by that conduct." <u>Ross v. Early</u>, 746 F.3d 546, 561 (4th Cir. 2014), <u>cert. denied</u>, 135 S.Ct. 183 (2014) (quoting <u>Rogers v. Pendleton</u>, 249 F.3d 279, 290 (4th Cir. 2001)).

With Foster, Jr.'s affidavit removed from consideration, there is little doubt in the existence of probable cause for his arrest.[2] The undisputed record evidence establishes that while surveilling Foster, Jr. for suspected narcotics distribution based on statements from a confidential source, Detective Wilson observed what he perceived to be a hand-to-hand drug transaction. Believing he had just witnessed a possible narcotics transaction, Detective Wilson attempted to conduct a

---

[2] To the extent Foster, Jr. asks the Court to make a credibility determination as to Detective Wilson using Detective Fisher's testimony, the Court will not assess the credibility of a witness in considering a motion for summary judgment. <u>Dennis</u>, 290 F.3d at 644-45.

car stop.    As Detectives Wilson and Fisher approached the stopped vehicle, however, Foster, Jr. drove off.

While pursuing the vehicle, Detective Wilson observed Foster, Jr. toss a black bag out of the driver's side window. Detectives Wilson and Fisher continued to pursue the vehicle to a dead end, at which point, Foster, Jr. exited the vehicle and fled on foot.   After a brief chase on foot, Detectives Wilson and Fisher caught Foster, Jr. and brought him back to the area of his vehicle.   Detective Fisher then found a clear plastic bag containing marijuana lying in plain view in the center console of Foster, Jr.'s vehicle.   Further, Detective Wilson retrieved the black bag that was observed being thrown from the vehicle. The bag contained approximately one quarter pound of marijuana, $250 in cash, a measuring scale, and CDS packaging material.

The Court concludes that Detectives Wilson and Fisher were justified in suspecting that Foster, Jr. was involved in criminal activity, and, therefore, in investigating further. See Williams v. State, 981 A.2d 46, 55 (Md.Ct.Spec.App. 2009) ("[P]robable cause may be found even if a trained, experienced police officer is not able to see whether the object transferred by one person to another was contraband."); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of

such."). Detectives then found Foster, Jr. in possession of marijuana and arrested him.

Moreover, Maryland law allows an officer to make a warrantless arrest where the arrestee commits a misdemeanor in the presence or within the view of a police officer. Md. Code Ann., Crim. Proc. § 2-202 (West 2015). It is undisputed that Detective Wilson and Fisher observed Foster, Jr. violate Maryland's unattended vehicle statute. See Md. Code Ann., Transp. § 21-1101 (West 2015) ("[A] person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set."). Thus, the moment Foster, Jr. exited his running vehicle and fled on foot, Detectives had probably cause to arrest him.

Nevertheless, "the 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." Graham v. Connor, 490 U.S. 386, 395 (1989) (citing Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)). Notwithstanding the existence of probable cause to arrest, where a claim of excessive force arises in the context of an arrest, it is similarly analyzed under the Fourth Amendment's "reasonableness" standard. Id. at 394-95. Since there is no allegation that Detective Wilson ever touched Foster, Jr.,

however, there can be no excessive force claim made against him.[3]
Accordingly, the Court concludes that Detective Wilson is
entitled to judgment, as a matter of law, that he committed no
constitutional infraction in the arrest of Foster, Jr.

### 3. Warrantless Search

Next, the Court turns to Foster, Jr. and Foster, Sr.'s
allegations that Detective Wilson violated their Fourth
Amendment rights by conducting a warrantless search of their
home and subsequently knowingly falsifying an affidavit in
support of a search warrant.[4]

Warrantless searches are presumptively unreasonable under
the Fourth Amendment. Kentucky v. King, 131 S.Ct. 1849, 1856
(2011). The presumption may be overcome, however, by the
exigency of the situation. Id. The Supreme Court of the United
States has identified several exigencies that may justify a
warrantless search of a home. Police officers may enter a

---

[3] Count I of the Complaint alleges that Detective Wilson
struck Foster, Jr. in the face while he was handcuffed. (Compl.
¶¶ 20, 39). In his deposition, however, Foster, Jr. testified
that it was Detective Fisher that struck him in the face while
he was handcuffed. (See Foster Dep. 37:20-38:1). There are no
allegations of excessive force against Detective Fisher in the
Complaint.

[4] Ms. Foster neither resides at the Residence nor was she
present at the Residence when Defendants entered and has,
therefore, failed to demonstrate any legitimate expectation of
privacy in the Residence. "Only legitimate expectations of
privacy are protected by the Constitution." Rakas v. Illinois,
439 U.S. 128, 151 (1978). Accordingly, Ms. Foster lacks Fourth
Amendment standing to challenge the search of the Residence.

premises without a warrant to prevent the destruction of evidence. Id.; see also United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991) ("Exigent circumstances can arise when the evidence might be destroyed before a search warrant could be obtained.").

In United States v. Turner, the Fourth Circuit set forth five factors relevant to determining whether exigent circumstances arising from the potential destruction of contraband evidence existed. These factors include:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

650 F.2d 526, 528 (4th Cir. 1981). "[T]he proper inquiry focuses on what an objective officer could reasonably believe." Grissett, 925 F.2d at 778.

First, while acting on a tip from a confidential source that a man fitting the description of Foster, Jr. was storing illegal narcotics at the Residence, Detective Wilson observed Foster, Jr. exit the Residence just prior to observing him toss a black bag, containing approximately one quarter pound of marijuana, out of the driver's side window of his vehicle. Second, while Detectives were in the process of arresting Foster, Jr., only a few blocks from his home, he began yelling

15

to a crowd of bystanders to tell his "people" that he was being arrested.  Based on these undisputed facts, the Court finds that there was a rational basis for Detectives Wilson and Fisher to believe that: (1) marijuana, which is readily destructible, was present in the Residence; (2) Foster, Jr. was alerting people close to him to either destroy or remove the marijuana from his home; and (3) they were confronted with an emergency in which the delay necessary to obtain a warrant would enable someone close to Foster, Jr. to enter the Residence and destroy evidence.

Moreover, the destruction of contraband is only one of several situations that may create exigent circumstances obviating the requirement of a warrant.  Another judicially recognized exigency is the objectively reasonable belief that immediate entry is needed to render assistance or prevent harm to persons within.  Hunsberger v. Wood, 570 F.3d 546, 555 (4th Cir. 2009) (quoting United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992)).  Here, Foster, Jr. told the Detectives that he left a baby at the Residence.  (Fisher Dep. 28:3-6, 32:5-8 Foster, Jr. Dep. 22:3-5).  "Simply as a general matter, 'the absence of responsible adult supervision of children is an exigent circumstance justifying a warrantless entry.'" United States v. Taylor, 624 F.3d 626, 632 (4th Cir. 2010) (quoting People v. Peterson, 543 S.E.2d 692, 696 (Ga. 2001)).

Accordingly, the warrantless entry of the Residence was justified to ensure the safety of the child and to prevent potential evidence from being destroyed or removed.

The reasonableness of the Detectives' initial entry, however, does not exhaust the concerns of the Fourth Amendment. Plaintiffs allege Detectives conducted an unconstitutional search of the Residence prior to obtaining a search warrant. In support of this contention, Ms. Foster testified that she observed officers walking around inside the Residence and an unidentified officer was looking above the entertainment system and feeling behind the television set. (Surina Foster Dep. 14:6-11, ECF No. 38-5). Defendants contend, however, that once inside, they conducted a constitutionally permitted protective sweep to ensure there were no other individuals in the Residence and a limited search in an attempt to identify the unattended two-year-old found inside.

Although the warrantless entry of the Residence is justified, the scope of the ensuing search must also be reasonable and "be limited by the type of emergency involved." Taylor, 624 F.3d at 633 (quoting United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992)). Officers are entitled to perform a "protective sweep" when they have "articulable facts which, taken together with the rational inferences from which those facts, would warrant a reasonably prudent officer in believing

that the area to be swept harbors an individual posing a danger to those on the arrest scene." United States v. Jones, 667 F.3d 477, 483 (4th Cir. 2012) (quoting Maryland v. Buie, 494 U.S. 325, 334 (1990)).

Here, despite the arrest occurring outside the Residence, Detectives reasonably suspected there may have been other individuals inside. As discussed above, there was a rational basis for Detectives' belief that Foster, Jr. was alerting people close to him to either destroy or remove evidence from his home; thus, Detectives could make the reasonable inference that someone could have entered the Residence to destroy or remove evidence prior to their arrival. The Court finds, therefore, that Defendants were reasonable in conducting a protective sweep to ensure there was no one inside the Residence that could pose a danger to them and to secure the Residence in preparation for a search warrant.[5]

Moreover, Ms. Foster testified that when she asked the officer why he was searching before a search warrant was issued, the officer indicated that he was looking for a piece of mail to identify the unattended child. (Surina Foster Dep. 14:14-21). The Court finds that a search for documents to help identify an unattended two-year-old child was reasonable to ensure the

---

[5] Ms. Foster's testimony that Detectives were walking around inside the Residence is consistent with Defendants argument that they were conducting a protective sweep.

child's safety and, therefore, within the scope of the emergency. Accordingly, Defendants are entitled to judgment, as a matter of law, that the initial protective sweep of the Residence was not unreasonable within the meaning of the Fourth Amendment.

### 4. Subsequent Search Warrant

Finally, Plaintiffs argue the ensuing search of the Residence was unreasonable within the meaning of the Fourth Amendment because the probable cause on which the search warrant was based was tainted by two intentional misrepresentations. First, Plaintiffs assert that the surveillance camera at the front of the Residence revealed that Foster, Jr. was not carrying a black bag or any similar item in his hands when he exited his home; and, second, that Detectives Wilson and Fisher could not have observed Foster, Jr.'s activities from a position in the 5600 block of Groveland Avenue. "It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is 'necessary to the finding of probable cause.'" Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994) (quoting Franks v. Delaware, 438 U.S. 154, 156 (1978).

Here, the undisputed facts stated in the sworn statement of probable cause establish that Detective Wilson received a tip from a confidential source that a man fitting the description of

Foster, Jr. was storing illegal narcotics at the Residence, and selling those narcotics in the immediate surrounding neighborhood.  Detective Wilson observed Foster, Jr. exiting the Residence immediately prior to observing a suspected drug transaction just a few blocks away.  After a brief case and upon his arrest, officers seized a quantity of marijuana and cash. Based upon these facts, the Court concludes there was sufficient probable cause to support a search warrant for the Residence even in the absence of Detectives Wilson's misrepresentations. Accordingly, Defendants are entitled to judgment, as a matter of law, that the ensuing search of the Residence was not unreasonable within the meaning of the Fourth Amendment.

**5. Surina Foster**

The Court next turns to Ms. Foster's allegations that Defendants deprived her of her Fourth Amendment right to be secure against an unreasonable seizure by unjustifiably restricting her movements.  "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).  Ms. Foster testified that she never felt as though she was not free to leave.  (See Surina Foster Dep. 17:5-7).  Accordingly,

Defendants are entitled to judgment, as a matter of law, that Ms. Foster's Fourth Amendment rights were not violated.

### III. CONCLUSION

For the foregoing reasons, this Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment (ECF No. 38), and GRANT in part Defendant's Motion to Strike from Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Plaintiff Thomas Robert Foster's Affidavit and all Reference to and Evidence of Irrelevant and Inadmissible Allegations about Defendant Detective Wilson's Prior Conduct (ECF No. 48). Defendant's request to strike all references to and evidence of irrelevant and inadmissible allegations about Defendant Detective Wilson's prior conduct is DENIED as Moot.

Entered this 30th day of July, 2015

/s/
_____
George L. Russell, III
United States District Judge